THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Emanuel Brown            )
                         )
        Petitioner(s),   )
                         )     NOTICE
    v.                   )
                         )     1:97CV761
United States of America )     2:90CR240-1
                         )
        Respondent(s).   )

FILED JAN 28 1998

 Attached to this Notice are the Magistrate Judge's Recommendations in the above-entitled action, which have been filed and entered on the docket in this case.
 Rule 72(b), Fed.R.Civ.P., provides in pertinent part:
 (b) Dispositive Motions and Prisoner Petitions.

\* \* \*

 A party objecting to the recommended disposition of the matter shall promptly arrange for the transcription of the record, or portions of it as all parties may agree upon or the magistrate judge deems sufficient, unless the district judge otherwise directs. Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. The district judge to whom the case is assigned shall made a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

 You are hereby notified that unless written objections to the Magistrate Judge's Recommendations are served and filed as provided in the federal rule, the district judge shall enter an appropriate order or judgment but need not make a de novo review of the Magistrate Judge's Recommendations. Therefore, if you fail to serve and file objections within ten (10) days from the date of this Notice, you may waive your right to question on appeal the substance of the Magistrate Judge's Recommendations accepted by the district judge.

 I hereby certify that on the **28th day of January, 1998**, I deposited in the United States mail one true copy of Magistrate Judge's Recommendations attached, enclosed in a United States Government envelope, addressed to the attorneys listed below at the last known addresses, as follows:


Emanuel Brown
00594-158
Minersville, PA 17954

John W. Stone, Jr.
Office of US Attorney
POB 1858
Greensboro, NC 27402


J. P. Creekmore, Clerk
By: _____
     Deputy Clerk

180.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EMANUEL BROWN,                )
                              )
        Petitioner,           )
                              )    1:97CV761
    v.                        )    2:90CR240-1
                              )
UNITED STATES OF AMERICA,     )
                              )
        Respondent.           )

FILED JAN 27 1998

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Emanuel Brown, a federal prisoner, has brought a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. On November 26, 1990, a United States Grand Jury for the Middle District of North Carolina charged petitioner and others in a superseding indictment on multiple counts of bank robbery. All counts charged petitioner with aiding and abetting through planning and participating in the robbery of the Bessemer Avenue branch of Wachovia Bank and Trust in Greensboro, North Carolina. Count One charged petitioner with bank robbery in violation of 18 U.S.C. § 2113(a). Count Two charged petitioner with armed bank robbery in violation of 18 U.S.C. 2113(d). Count Three charged petitioner with carrying and using firearms during a crime of violence in violation of 18 U.S.C. § 924(c). After proceeding to trial, the jury found petitioner guilty on all three counts on March 13, 1991. On July 3, 1991, after Count One was merged with Count Two, petitioner was sentenced to imprisonment for a term of 270 months on merged Count Two, and a term of five years supervised release. As to Count Three, petitioner was sentenced to imprisonment for a term of 60 months to run consecutive

to the sentence on Count Two, and a term of three years supervised release to run concurrently with the term of supervised release imposed on Count Two. As to all counts, petitioner was ordered to pay a $100 special assessment and was sentenced to make restitution to Wachovia Bank and Trust Company in the amount of $303,700, in installments as directed by the probation officer during the period of supervised release. Petitioner appealed his conviction and sentence on several grounds, and the Fourth Circuit affirmed the district court in an unpublished opinion decided on January 6, 1993. On July 16, 1997, petitioner filed the instant Section 2255 motion, advancing six grounds for relief. The government has responded, and petitioner has replied. The matter is now before the Court for a ruling. See Rule 8, Rules Governing Section 2255 Proceedings.

## DISCUSSION

Petitioner's grounds touch upon many of the facts in the case, which will be summarized briefly as set forth in the Fourth Circuit's opinion. Petitioner, using information from a bank employee, was the "mastermind" behind a plan to rob the Wachovia Bank in Greensboro, North Carolina. He had three accomplices: Neil Harewood, Charles Walker and a third man called "Nawny." Using petitioner's two vehicles, a Cadillac and a Monte Carlo, on September 11, 1990, this group drove from Philadelphia, Pennsylvania, to Durham, North Carolina, and, using petitioner's name, checked into a Comfort Inn, rented a U-Haul truck, and stole a Camaro. They drove to Greensboro where they parked the Camaro and the U-Haul near the bank, after which they returned to Durham in the Monte Carlo.

On September 13, 1990, petitioner drove the three men to Greensboro, waiting near the bank while Harewood and Walker executed the robbery. These two took $371,000 from the bank and drove away in the Camaro, which they abandoned when they boarded the U-Haul, which was

driven by Nawny. Petitioner followed the U-Haul to a shopping mall parking lot nearby where the money was transferred to petitioner's Monte Carlo and the bank's money bags were discarded. After returning to the Comfort Inn in Durham, petitioner disposed of a gun that Walker stole from a bank guard during the robbery. Petitioner then returned to Philadelphia with his share of the robbery proceeds.

Petitioner's direct appeal raised numerous issues, all of which were found to be non-meritorious. United States v. Brown, No. 91-5088 (4th Cir. Jan. 6, 1993). A criminal defendant is forbidden "to recast, under the guise of a collateral attack, questions fully considered" on direct review. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.), cert. denied, 429 U.S. 863, 97 S. Ct. 169, 50 L. Ed. 2d 142 (1976).

### GROUND ONE

Petitioner alleges that the court violated the Sixth Amendment right to counsel at all stages in the proceeding by not appointing substitute counsel for his court-appointed attorney. (Docket No. 161 at 12.A) On February 4, 1991, twenty-one days before the first day of trial, counsel informed the court that petitioner wanted to file a motion to represent himself and excuse counsel, whereupon the Court examined petitioner. (Docket No. 72) The court found that petitioner waived his right to counsel, but instructed excused counsel, Mr. Hunoval, that he could remain with petitioner as standby counsel in the event that his further assistance was required.

Precisely the same issue was fully considered in petitioner's appeal, where he also claimed that the district court erred in not appointing substitute counsel. The Fourth Circuit found that petitioner, in fact, did not request substitute counsel, but rather requested that he be allowed to represent himself. Under the circumstances, the Fourth Circuit concluded the district court was

justified in permitting petitioner to waive his right to appointed counsel, and proceed *pro se* with counsel available on a stand-by basis. United States v. Brown, No. 91-5088, at 3-7 (4th Cir. Jan. 6, 1993). Petitioner acknowledges that issues already litigated on direct appeal are not subject to collateral review, but observes, correctly, that there are exceptions where there has been an intervening change in the law which warrants reconsideration. Boeckenhaupt, 537 F.2d at 1183; Davis v. United States, 417 U.S. 333, 342, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974).

In his reply, petitioner argues that subsequent Fourth Circuit law would require that the district court be reversed. (Docket No. 172 at 2) (citing United States v. Mullen, 32 F.3d 891 (4th Cir. 1994)). He is mistaken. Mullen did not establish any new law, or overturn any of the existing rules concerning reviewing motions for substitute counsel. Mullen, 32 F.3d at 895 (citing test in United States v. Gallop, 838 F.2d 105, 107 (4th Cir.), cert. denied, 487 U.S. 1211, 108 S. Ct. 2858, 101 L. Ed. 2d 895 (1988). Rather, unlike most substitution of counsel cases presented for appeal, which usually involve denials of requests submitted at trial or on the eve of trial, in Mullen the defendant filed a motion filed nearly a month before trial. Mullen reversed the district court in denying a motion to withdraw defendant's by privately-retained counsel and to have substitute counsel appointed.

Petitioner's case is distinguishable because, first, he requested no new counsel, but rather permission to proceed *pro se*; and, second, that this would have been his second, not his first, court-appointed attorney. There has been no change in the law or in the application of the law to the facts that would allow the Court again to review petitioner's allegation that was previously fully considered. Therefore, petitioner's allegation of denial of his right to counsel is barred and without merit.

## GROUND TWO

Petitioner alleges that his right to Due Process of Law in the Fifth Amendment was violated by an improper arrest warrant, which he further alleges was "never authorized." (Docket No. 161 at 12.B) He further alleges perjury by FBI agents in affidavits supporting a criminal complaint, a search warrant, and at the grand jury proceedings. (Id.)

In his direct appeal, petitioner alleged that the government lacked probable cause to arrest petitioner, and that the court erred in not holding a Franks hearing to determine if FBI Agent Baker lied in an affidavit supporting petitioner's arrest warrant. After noting that it carefully reviewed these issues, the court concluded that none had any merit or at best constituted harmless error. United States v. Brown, No. 91-5088, at 9 n.4 (4th Cir. Jan. 6, 1993). Insofar as petitioner is attempting to relitigate issues already considered in the appeal, relief on this ground is barred. Boeckenhaupt, 537 F.2d at 1183.

In addition, these allegations are so vague, and completely without supporting facts, that they may be dismissed as conclusory.[1] Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), cert. denied, 507 U.S. 923, 113 S. Ct. 1289, 122 L. Ed. 2d 681 (1993). The government, in support of its contention that the arrest warrant was validly issued, submitted a copy of the warrant, dated September 26, 1990, with its response. (Docket No. 168, Ex. G) Petitioner

---

[1] In support, petitioner submits a copy of a letter from one Albert L. Becker, with a letterhead indicating that he is an attorney from Hatboro, Pennsylvania, dated June 15, 1993. (Docket No. 161, Attach.) The letter gives Mr. Becker's account of his investigation into the whereabouts of petitioner's arrest warrant. This letter is not an affidavit, sworn under penalty of perjury, and does not rebut the government's documentation of the warrant.

-5-

alleges nothing that calls into question any facts in the affidavits supporting probable cause. Therefore, relief on this ground is also not merited.

### GROUND THREE

Petitioner alleges that the district court abused its discretion when it admitted evidence of other crimes, pursuant to Fed. R. Evid. Rule 404(b), and when it denied petitioner's motion to suppress evidence stemming from a stop of Charles Walker. (Docket No. 161 at 12.C) Petitioner does not specify the particular "bad act" evidence to which he refers, nor does he suggest how he might have grounds to exclude the evidence stemming from a stop and search of Charles Walker. The court cannot evaluate generalized claims of error. Nickerson, 971 F.2d at 1136. In addition, on appeal, the Fourth Circuit considered the issue whether admission of evidence of petitioner's involvement in a previous robbery might have been error. Insofar as petitioner attempts to relitigate this issue, the relief on this ground is barred. Boeckenhaupt, 537 F.2d at 1183.[2] The allegation challenging the Rule 404(b) evidence will be dismissed as without merit.

Petitioner further argues that his objection to the evidence seized from the stop and arrest of Charles Walker was considered by the Fourth Circuit in his direct appeal, and it was decided against petitioner. (Docket No. 172 at 6) However, he asserts that the United States Supreme Court case, United States v. Padilla, 508 U.S. 77, 113 S. Ct. 1936, 123 L. Ed. 2d 635 (1993), overruling a Ninth Circuit decision, is authority for changing the law of the circuit regarding standing. Petitioner contends that the decision remanded the case to determine if defendants had

---

[2] In addition, Petitioner appears to abandon the objection to the admission of Rule 404(b) evidence in one of his replies. (Docket No. 172 at 6)

a reasonable expectation of privacy that was invaded, regardless of who was driving the car that was searched.

He claims that the fact that petitioner rented the U-Haul gives him a privacy interest in it. The rental of the U-Haul was clearly in pursuance and furtherance of the conspiracy. The Court in Padilla held that coconspirators have no legitimate expectations of privacy under the Fourth Amendment even if they may have a supervisory role or joint control over the place or property involved. Padilla, 508 U.S. at 78, 113 S. Ct. at 1937. The decision also stated that a Fourth Amendment violation can only be brought by persons whose rights were violated "by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Id. 508 U.S. at 82, 113 S. Ct. at 1939 (quoting Alderman v. United States, 394 U.S. 165, 171-72, 89 S. Ct. 961, 965-66, 22 L. Ed. 2d 176 (1969)). If the decision supports a position in the case, it supports the district court's finding that petitioner did not have a reasonable expectation of privacy in the truck that Charles Walker was driving, or in the property within the truck. Therefore, petitioner's challenge to the district court's admission of the evidence from the stop of Charles Walker is without merit, and should be dismissed.

## GROUND FOUR

Petitioner alleges that the court abused its discretion in sentencing him as a de facto career criminal offender, pursuant to U.S.S.G. § 4A1.3. (Docket No. 161 at 12.D) This issue, also, was considered fully on direct review. United States v. Brown, No. 91-5088, at 7-8 (4th Cir. Jan. 6, 1993). Therefore, petitioner's attempt to relitigate the claim in a Section 2255 motion is barred.

Petitioner's claim that a subsequent Fourth Circuit case would have changed the result is unavailing. (Docket No. 172 at 6-7) Petitioner contends that in United States v. Harrison, 58

F.3d 115, 118 (4th Cir. 1995), the Fourth Circuit changed its criteria for application of defacto career offender status. In <u>Harrison</u>, defendant's sentence was vacated and remanded because the record did not reflect the findings mandated by a 1992 case, <u>United States v. Cash</u>, 983 F.2d 558 (4th Cir. 1992), <u>cert. denied</u>, 508 U.S. 924, 113 S. Ct. 2380, 124 L. Ed. 2d 284 (1993). <u>Harrison</u>, 58 F.3d at 118-19. In this case, the Fourth circuit has already concluded that the district court made the appropriate findings pursuant to <u>Cash</u>. <u>United States v. Brown</u>, No. 91-5088, at 7-8 (4th Cir. Jan. 6, 1993). Petitioner does not allege facts that would demonstrate the contrary. This allegation is without merit.

### GROUND FIVE

Petitioner argues that the conviction and sentence on Count Three, using or carrying a weapon during or in connection with a crime of violence, in violation of 18 U.S.C. § 924(c)(1), was error in the light of subsequent case law, including <u>United States v. Bailey</u>. (Docket No. 161 at 12.D) Petitioner alleges that the only evidence that he assisted in using or carrying a weapon came from the testimony of a perjurer, and was therefore insufficient to convict him. (Docket No. 172 at 8) Petitioner further alleges that, even if this evidence were accepted as credible, under current law, it would be insufficient to convict him of using or carrying a weapon (or aiding and abetting in the same) during or in connection with the robbery. (<u>Id.</u>) Petitioner errs if he is implying that there are no cases that affirm convictions on § 924(c) where the defendants did not have actual or constructive possession of the weapon during the crime. (<u>Id.</u> at 7) In one Fourth Circuit case, defendant was convicted, not upon his personal using or carrying of the weapon, but upon his knowledge that his cohort in the crime was brandishing a gun during the drug transaction. <u>United States v. Cook</u>, 76 F.3d 596, 603 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 117 S. Ct. 320,

-8-

136 L. Ed. 2d 235 (1996). See also United States v. Sanders, 125 F.3d 850, 1997 WL 585742 *1 (4th Cir. 1997) (rejecting defendant's argument that Bailey was intended to limit convictions only to those who actually used or carried firearms).[3] See, e.g., United States v. Martin, 25 F.3d 211, 213 (4th Cir.1994). More recent cases also affirm convictions on § 924(c) on an aiding and abetting theory, without actual or constructive possession by the defendant himself. United States v. Chen, ___ F.3d ___, 1997 WL 6911391, at *13 (4th Cir. 1997) (finding evidence that defendant supervised guards who actively employed firearms in an alien-smuggling operation supported conviction of aiding and abetting in the use of a firearm in relation to a crime of violence).

Under 18 U.S.C. § 924(c)(1), "whoever, during and in relation to any crime of violence . . . uses or carries a firearm," shall receive, in addition to the penalty for the underlying offense, a mandatory sentence of imprisonment for a term of five years. In Bailey, the United States Supreme Court reinterpreted the term "uses" in the statute to mean active employment, but reserved interpretation on the term "carries." Bailey v. United States, ___ U.S. ___, 116 S. Ct. 501, 509, 133 L. Ed. 2d 472 (1995).[4] The term "carry" was subsequently interpreted for the Fourth Circuit in United States v. Mitchell, 104 F.3d 649 (4th Cir. 1997). The court found that the plain meaning of "carry" requires "knowing possession and bearing, movement, conveyance,

---

[3] No circuit has foreclosed a conviction on § 924(c)(1) on an aiding and abetting theory. See United States v. Price, 76 F.3d 526, 529(3d Cir. 1996) (collecting cases from all circuits).

[4] "Use" includes brandishing, displaying bartering, striking with, and most obviously, firing or attempting to fire, a firearm. . . . [E]ven an offender's reference to a firearm in his possession could satisfy 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use."

Bailey, 116 S. Ct. at 508.

or transportation of the firearm . . . ." Id. at 653. The court also determined that "in relation to" in the statute requires that the firearm must have "some purpose or effect with respect to the drug trafficking crime" and that its presence not be "the result of accident or coincidence." Id. at 654. The court explicitly rejected that the term "carries" requires that the firearm must be readily accessible to the defendant. Id. at 653.

Because petitioner was convicted after trial by a jury, whether the verdict can support a finding of "use" under Bailey or "carry" under Mitchell depends upon the acceptability of the jury instructions,[5] and upon the record evidence at trial.[6] The Court accepts the government's concession that the district court's instruction on the meaning of "use" was legally infirm in the sense now defined by Bailey. (Docket No. 168 at 16) If, however, there is at least another legally adequate ground in the instructions for the 924(c)(1) conviction, i.e., the "carry" ground, and it is supported by sufficient evidence on the record, the verdict will stand regardless of its actual basis. United States v. Hudgins, 120 F.3d 483, 487 (4th Cir. 1997).

The jury was instructed on Count Three that before a defendant can be found guilty of

---

[5] Petitioner did not object at trial to the jury instructions, nor did he raise the matter on appeal. Therefore this is a nonconstitutional claim that should have been raised on direct appeal, and is barred unless petitioner can demonstrate cause for his procedural default, and prejudice resulting from the errors of which he complains. United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

[6] In a habeas corpus action, the standard of review for a claim of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). The Fourth Circuit has held that a court reviewing sufficiency of the evidence "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). It has further been held that "circumstantial evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. George, 568 F.2d 1064, 1069 (4th Cir. 1978). The credibility of witnesses is within the sole province of the jury, and not susceptible to review. United States v. Saunders, 886 F.2d 56 (4th Cir. 1989). Uncorroborated accomplice testimony may suffice. United States v. Figurski, 545 F.2d 389 (4th Cir. 1976).

violating § 924(c)(1), the United States must prove beyond a reasonable doubt each of the following. First, defendant committed or aided and abetted others in commiting one of the felonies in Count One (robbery) or Count Two (armed robbery). Second, that the offense involved the use or attempted or threatened use of force. And Third, that

> during and in relation to that offense the defendant knowingly carried or aided and abetted someone else in carrying the firearm described in the indictment.
> A person is considered to have carried a firearm if he has it in his actual possession during the commission of the offense alleged. Actual possession means that a person has direct physical control over an object on or about his person. A firearm relates to an offense if its presence in any way facilitates or furthers the commission of that offense.

(Docket No. 135K., at 2306-07)

The court's use of the term "carry" in the instructions is sufficiently close to the plain meaning as identified in <u>Mitchell</u> to be acceptable. "Carry" requires "knowing possession and bearing, movement, conveyance, or transportation of the firearm . . . ." <u>Mitchell</u>, 104 F.3d at 653. Therefore, the court's instruction on the "carry" ground is not legally inadequate or unconstitutional and, if supported by sufficient evidence, will not entitle petitioner to relief pursuant to § 2255.

The record shows that petitioner drove to Greensboro with the three other codefendants in his Monte Carlo. The robbers had two nine-millimeter handguns. Petitioner gave one of these to codefendant Harewood on the morning of the robbery. (Trial Tr., Vol. IV at 815, Vol VI at 1098) Codefendants Walker and Harewood executed the robbery. Harewood, waving his gun in the air, told everyone in the bank to get down. (Trial Tr., Vol. IV at 817) Codefendant Walker took a gun away from a Wells Fargo guard in the bank. (Trial Tr., vol. IV at 818-19; Vol. VI at 1103-04) Leaving the bank in the Camaro, they transferred the guns and money to the U-Haul

truck, which Nawny drove to the shopping center where petitioner was waiting with his Monte Carlo to unload the money. (Trial Tr., Vol. IV at 824, Vol. VI at 1103) Codefendant Harewood gave the captured gun to petitioner. (Trial Tr., Vol. IV at 827-28) The gun was later found in a dumpster across the street from the Comfort Inn in Durham where petitioner was staying. (Trial Tr., Vol. II at 373-76, Vol. III at 483-86)

Thus the record amply supports the inference that petitioner carried the weapon in the sense required by Mitchell, and petitioner's claim on this ground should be dismissed.

### GROUND SIX

Petitioner alleges that the restitution order of $303,000 to Wachovia Bank, was in error, evidently based upon United States v. Bruchey, 810 F.2d 456 (4th Cir. 1987). (Docket No. 161 at 12.D) Petitioner does not allege in what ways the court may have erred pursuant to the "Bruchey Standard" that he invokes without elaboration. Therefore, this allegation is conclusory. In addition, this is a nonconstitutional claim that could have been raised on direct appeal. "Nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976). See also United States v. Emanuel, 869 F.2d 795 (4th Cir. 1989). Furthermore, nonconstitutional claims that could not have been asserted on direct review are only subject to collateral review if they involve "a fundamental defect which inherently results in a complete miscarriage of justice." Stone, 428 U.S. at 477 n.10. See also United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Both because petitioner waived this claim through procedural default, and through lack of specific pleading or demonstrating a

"complete miscarriage of justice," the allegations on this ground are without merit and should be dismissed.

IT IS THEREFORE RECOMMENDED that petitioner's motion to vacate, set aside or correct sentence (Docket No.161) be denied, and that this action be dismissed. Ancillary motions filed by petitioner are without merit in light of this Recommendation and should be denied.

_____
P. Trevor Sharp, U.S. Magistrate Judge

January 27, 1998