IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EMANUEL BROWN, )
 )
    Petitioner, )
 )
 )   1:97CV761
v. )   2:90CR240-1
 )
UNITED STATES OF AMERICA, )
 )
    Respondent. )

J-U-D-G-M-E-N-T

For the reasons set forth in the Order filed contemporaneously with this Judgment,

**IT IS HEREBY ORDERED AND ADJUDGED** that this action be, and the same hereby is dismissed with prejudice.

_____
United States District Judge

April
~~March~~ 2, 1998

Ex. (1)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| EMANUEL BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 1:97CV761 |
| v. | ) | 2:90CR240-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

O-R-D-E-R

On January 27, 1998, in accordance with 28 U.S.C. § 636(b), the Recommendation of the United States Magistrate Judge was filed and notice was served on the parties in this action and a copy was given to the court.

Within the time limitation set forth in the statute, petitioner objected to the Recommendation.

The court has appropriately reviewed the portions of the Magistrate Judge's report to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's report. The court therefore adopts the Magistrate Judge's recommendation.

**IT IS THEREFORE ORDERED** that petitioner's motion to vacate, set aside or correct sentence (Docket No. 161) be **DENIED** and that this action be dismissed. A Judgment dismissing

this action with prejudice will be entered contemporaneously with this Order. In view of this disposition, petitioner's various motions are **DENIED** as without merit.

_____
United States District Judge

April
~~March~~ 2 , 1998

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 98-6584

UNITED STATES OF AMERICA,

　　　　　　　　　　　　　　　　　　　　　Plaintiff - Appellee,

versus

EMANUEL BROWN,

　　　　　　　　　　　　　　　　　　　　　Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., District Judge. (CR-90-240, CA-97-761-1)

Submitted: June 18, 1998　　　　　　　　　Decided: July 9, 1998

Before MURNAGHAN and WILKINS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Dismissed by unpublished per curiam opinion.

Emanuel Brown, Appellant Pro Se. John Warren Stone, Jr., Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

Ex. (2)

PER CURIAM:

Appellant seeks to appeal the district court's order denying his motion filed under 28 U.S.C.A. § 2255 (West 1994 & Supp. 1998). We have reviewed the record and the district court's opinion accepting the recommendation of the magistrate judge and find no reversible error. Accordingly, we deny a certificate of appealability and dismiss the appeal on the reasoning of the district court. <u>United States v. Brown</u>, Nos. CR-90-240; CA-97-761-1 (M.D.N.C. Apr. 2, 1998). Appellant's motion for appointment of counsel is denied. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>DISMISSED</u>

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED
July 26, 2005

No. 05-377
CR-90-240

In Re: EMANUEL BROWN

    Movant

---------
O R D E R
---------

    Movant has filed a motion pursuant to 28 U.S.C. Section 2244 for authorization to file a successive application for relief.

    The Court denies the motion.

    Entered at the direction of Judge Williams with the concurrence of Judge Wilkinson and Judge Michael.

For the Court,

/s/ Patricia S. Connor
_____
CLERK

Ex.(3)

Emanuel Brown
P.O. Box 759 #00594-158
Minersville, Pa. 17954.

Mr. Kennedy Thompson
Chairman of The Wachovia Corporation
1526 West W.T. Harris Boulevard
Charlotte, N.C. 28262.

September 1, 2005

RE: $82,365.85.

Dear Mr. Thompson;

Please be advised that the purpose of this particular letter is to respectfully request that the Wachovia Bank return to me $82,365.85. that was given to the Wachovia Bank towards an illegal and invalid restitution order. I am confident that the Wachovia Bank does not have an interest in retaining the private and personal property of a U.S. Citizen, via an improper and void restitution order.

STATEMENT OF FACTS:

On September 13, 1990, (2) unknown black male suspects robbed the Wachovia Bank at 1200 E. Bessemer Avenue, in Greensboro, N.C. They allegedly stole $371,000,00. Charles Walker and Neil Harewood eventually plead guilty to this robbery and received 10 and 5 years respectively. Mr. Harewood testified that the stolen bank robbery proceeds were split (5) ways, with each co-conspirator receiving about $70,000.00 apiece.

Within 1-2 hours after my illegal arrest in Philadelphia, Pa., the FBI confiscated $67,365.85 from my personal residence. It was assumed that this $67,365.85 was proceeds from the robbery of the Wachovia Bank. Despite the fact that there was no evidence that the $67,365.85 came from the Wachovia Bank, the district court ordered me to pay $303,700,00 in restitution and applied the $67,365.85 to this illegal restitution order.

Sir, I probably will never be able to convince you that I am completely innocent of being a part of this bank robbery, but I can honestly and truthfully tell you that the $67,365.85 taken from me by the FBI on September 28, 1990, was legitimate financial proceeds that were derived from several co-owned businesses that were strictly cash businesses which I co-owned between 1985 to September of 1990. See enclosed business advertisement.

Did I pay income taxes for these businesses; no sir. Did I conspire to rob the Wachovia Bank; no sir. Sir, I have been illegally confined in prison for almost fifthteen years, and my release date is 2014.

Ex (4)

During my illegal incarceration I've lost everything I ever owned or co-owned. When I leave this prison, if I live to see 2014, I will have nothing but the clothes on my back, and a bus ticket to Philadelphia, Pa. In 1995, I settled a Tort Claim for negligence against the U.S. Marshal's Service for $20,000,00. I had an Attorney at-Law who agreed to assist me in my criminal case, if I agreed to allow the government to confiscate $15,000,00 from my end of the settlement agreement and apply it to the illegal restitution order.

Ultimately, the lawyer received her $5,000,00 and the government sent my $15,000,00 to the Wachovia Bank. See enclosed letter from Ms. Carol A. Carson, and Ms. Gloria Harlow from the Wachovia Bank Fraud Department. Even though Ms. Carson did receive her $5,000,00 legal fee, she never assisted me in my criminal case. Apparently, someone at the Wachovia BAnk misplaced or possibly misappropriated the $15,000,00.

Nevertheless, I am the rightful and legal owner of the $67,365.85, and the $15,000,00., and I again respectfully request that the Wachovia Bank send a Certified check in the amount of $82,365,85, payable to Emanuel Brown, to Attorney at Law, Mr. Albert L. Becker, at 3929 Buckwampum Road, Kintnersville, Pa. 18930.
I thank you in advance for your time and future cooperation.

God Bless You
Sincerely,

*Emanuel Brown*

Emanuel Brown

Wachovia Corporation
Office of the President
NC8532
1525 West W.T. Harris Boulevard
Charlotte, NC 28288-8532

Tel 866 642-9407
Fax 704 427-3459



WACHOVIA

October 3, 2005

Emanuel Brown
PO Box 759, No. 00594-158
Minersville PA  17954

Dear Mr. Brown:

I am sending this letter as a follow up to my previous letter dated September 30, 2005. I appreciate the opportunity to further respond to your concerns.

Mr. Brown, Wachovia Bank has reviewed the letter received from you dated September 1, 2005, asking for a refund of $15,000.00 paid to Wachovia by the United States (US) District Court. Wachovia received those funds as restitution pursuant to a "Stipulation for Compromised Settlement" that was approved by the United States District Court. Wachovia received those funds as a result of "due process," and we will not return the money to you. Your claim that the funds seized from you by the Federal Bureau of Investigations (FBI) were from legitimate financial sources is a matter that you will need to address with the US District Court and the FBI. You do not have a valid claim for the funds with Wachovia Bank; therefore, our decision is final and the matter is considered closed. If you have any further concerns, please contact the US District Court or the FBI.

Sincerely,

Pedro Velazquez
Office of the President

cc:  Gloria Harlow
     Johnny Gregory

Ex (5)

Emanuel Brown
P.O. Box 759 #00594-158
Minersville, Pa. 17954.

Mr. Kennedy Thompson
Chairman of The Wachovia Corporation
1526 West W.T. Harris Boulevard
Charlotte, N.C. 28262.                           October (17) 2005

RE: $82,365.85/Letter Dated October 3, 2005:

Dear Mr. Thompson;

   Please be advised that as Chairman of the Wachovia Corporation, it is my opinion that you have breached your fiduciary duties to the shareholders of the Wachovia Corporation. When your subordinate employee, Mr. Velazquez decided to keep my personal property in the amount of $82,365.85, that was a very bad decision, because he engaged in unsafe or unsound banking practice, which will create undue financial risk to the shareholders of Wachovia Corporation. See, **Federal Deposit Insurance Act, §2(8), 12 U.S.C.A. §1818**, and **§1818 (c)(1)**.

Needless to say, Mr. Velazquez's actions are legally and morally unconscionable. In addition, it is impossible for your organization to operate with <u>clean hands</u> in this particular financial debt, because the U.S. Government, as well as the U.S. District Court usurped and disregarded statutory restitution law and Fourth Circuit precedent case law.

Sir, you and your company cannot hide behind the alleged legal authority of the FBI and the U.S. District Court, in retaining illegally seized property, especially when the presumed legal authority is premised upon a null & void restitution order. When the U.S. District Court ignored and or disregarded the statutory command, and or the explicit language of the restitution law, the district court thereafter, lacked any and all legal jurisdiction to impose any restitution.

Sir, you are always going to believe that I had something to do with the bank robbery committed on September 13, 1990 at 1200 E. Bessemer Ave. in Greensboro, N.C., and this alleged fact, will continue to cloud your good judgment, and be your moral justification in continuing to keep personal financial property that does not belong to your corporation.

There is no documentation and or evidence that the $67,365.85 was associated with the 9-13-90 bank robbery. This monetary property was seized illegally in Philadelphia, Pa., on 9-28-90. Sir, please allow me to briefly explain to you why under <u>due process of law</u>, your organization is not legally or morally entitled to retain the $82,365.85. given to you by the U.S. Government........

EX.(6)

First and foremost, I am sure you will agree that U.S. Government employees are not above the law. Facts of Record: 1) On September 28, 1990, the FBI illegally arrested the plaintiff in Philadelphia, Pa., even though a warrant for the arrest of the plaintiff was never authorized by any U.S. Magistrate on 9-26-90; 2) The FBI illegally entered the plaintiffs personal residence at 5238 Kingsessing Ave., Philadelphia, Pa., and confiscated $67,365.85.

A legally authorized search & seizure warrant was never issued by any U.S. Magistrate in Philadelphia, Pa. 3) After illegally confiscating the $67,365.85, the government never filed any forfeiture proceedings, and the plaintiff was not given a due process hearing, to determine who was the rightful owner of the illegally seized $67,365.85. The district court simply allowed the U.S. Government the opportunity to retain the illegally seized property until after the plaintiff was convicted and sentenced between March and July of 1991.

See, **United States V. Premises Unknown As 608 Taylor Ave. 584 F.2d 1297 (1978)**, page 1302, [6,7], "The government is clearly permitted to seize evidence for use in investigation and trial. **Warden V. Hayden, 387 U.S. 294, 87 S.Ct. 1462, 18 L.Ed 2d 782 (1967)**. Nevertheless, the government may not by exercising its power to seize, effect a de facto forfeiture by retaining the property seized indefinitely. **United States V. United States Coin And Currency, 401 U.S. 715, 718, 91 S.Ct. 1041, 28 L.Ed 2d 434 (1971)**.

4) After the district court illegally ordered restitution in the amount of $303,700.00, the government allegedly received a court ordered Writ of Execution from the district court. I use the term allegedly received a court ordered Writ of Execution, because even though a federal judge's name is typed on this document, there is no authorized signature by an Article III federal judge.

In any event, the government invoked the statutory provisions of the **Federal Debt Collection Procedure Act. §28 U.S.C. §3202**. The FDCPA did not become effective federal statutory law until May 29, 1991, and did not apply to the plaintiff's illegal restitution order. Furthermore, even if you were to assume that the Writ of Execution under the FDCPA applied to the plaintiff's case, the use of the FDCPA was invalid and void as a matter of statutory law, because the plaintiff never received adequate legal notice as required by §28 U,S.C.§3202(a),(b).

The FDCPA Act permits the enforcement of a judgment by Writ of Execution but requires that the judgment debtor be notified of the writ and given 20 days to request a hearing.

Unfortunately for the plaintiff, the government intentionally sent a copy of the Writ of Execution to the plaintiff's personal residence, located at 5238 Kingsessing Ave., Philadelphia, Pa., despite the undisputed fact that the government knew at all times that the plaintiff was in the physical custody of the U.S. Marshall's Service, or the U.S. Bureau of Prisons. See, **Mullane V. Central Hanover Bank & Trust Co.**, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed 2d 865 (1950);

"As in all cases in which proper notice under the Due Process Clause is at issue, the touchstone analysis is whether the notice was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections".

5) The district court made a factual and legal determination, after reviewing the Presentence Report, that the plaintiff could not afford to pay any court ordered fines, but then, to justify retaining the illegally confiscated $67,365.85, the court, without statutory authority, ordered the plaintiff to pay $303,700.00 in restitution, after the year 2014!

In fashioning a restitution order, a district court is circumscribed by the substantive and procedural limitations outlined in the **VWPA**. See, **18 U.S.C.§3663(e)(1)**; "The court <u>shall not impose restitution</u> with respect to a loss for which the victim has <u>received</u> or is to <u>receive</u> compensation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation.

Sir, I respectfully ask you, did your private insurer or anyone else, reimburse your organization for the $371,000.00 loss? If so, the continued retention of the $82,365.85. is in violation of the restitution statutory law, and amounts to your organization receiving unlawful double restitution payment, which is not authorized by the old restitution law in 1991. In any event, even if no one reimbursed your organization for the $371,000.00 loss, the restitution order is still invalid and null & void.

See, **U.S. V. Johnston**, 199 F.3d 1015 (9th Cir. 1999), "The language of the VWPA as of the date pertinent here, was clear: A court had no authority to "impose restitution with respect to a loss for which the victim has received or is to receive compensation. The government is correct that the record shows no evidence that the victims were compensated. What the government omits to mention, though, is that the question appears not to have been addressed at all by the district judge.

(3)

The absence of an answer when the question itself was never asked cannot excuse the initial failure to make the appropriate inquiry. Under the statute, in its then-existent form, the appropriate procedure required the district court to ensure at the sentencing hearing that there would be no duplication of restitution".

**United States V. Durham, 755 F.2d 511 (1985), [6],** "The record of the sentencing hearing is devoid of any indication that the trial court considered Durham's financial condition. The trial court also failed to make a finding with respect to whether Cumberland Valley, a federall insured bank, "has received or is to receive compensation" for its unrecovered losses. These duties are clearly mandated by the statute".

See, **United States V. Atkinson, 788 F.2d 900 (2nd Cir. 1986),** "It is imperative that restitution not be imposed without the court's considering third-party payments". **United Stated V. Bruchey, 810 F.2d 456 (4th Cir. 1987),** "In addition, sentencing statutes like the VWPA themselves impose important substantive and procedural limitations on the trial judges discretion...[3], "Since Congress has seen fit to require the several determinations of §3580(a), we are in turn obligated to insure that they are made.

[4], "First, §3580(a) requires a calculation of the victim's loss. There was no dispute here that the defendant embezzled $50,000.00. However, **§3579(e)(1),** explicitly provides that the court cannot impose restitution for a loss "for which the victim has received or is to receive compensation". Under **18 U.S.C.§3664(a),** the court, in determining whether to order restitution under section §3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependent's, and such other factors as the court deems appropriate". See, **U.S. V. Karam, 201 F.3d 320 (4th Cir. 2000).**

Court's have no inherent authority to order restitution but must do so only as authorized by strictly construed statutes. **United States V. Gilberg, 75 F.3d 15, 22 (1st Cir.1996),** "As we have explained above, section §3663(h)(1) specifies the procedures that may be invoked by the United States to enforce compliance with a restitution order, and incorporates by reference the procedures available for the collection of fines, which in turn allow the government to utilize a number of the remedies provided under the Internal Revenue Code for the collection of unpaid taxes.

Our review of the relevant portions of the VWPA thus leads us to conclude that Congress' careful enumeration of the means by which a restitution order may be enforced, and its designation of those parties authorized to proceed with that enforcement, is intended to be exhaustive. We therefore hold that a district court is limited to effecting the enforcement of a restitution order only as expressly provided by the VWPA.

U.S. V. Comer, 93 F.3d 1271 (6th Cir. 1996), "18 U.S.C. §3663(b)(1). Thus, the statute explicitly directs the district court to order restitution of a particular amount or "value" but does not necessarily authorize an order that the restitution be paid from a particular <u>fund or asset</u>". Moreover, §3612, entitled "Collection of an unpaid fine", delegates to the Attorney General the responsibility for collecting unpaid fines and requires notification upon determination of delinquency and default.

See, **Beck V. Prupis**, 529 U.S. 494, 506, 120 S.Ct. 1608, 146 L.Ed 2d 561 (2000); (noting the "longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous". Mr. Thompson, you are probably not aware of this particular fact, relating to the $15,000.00 Settlement/Compromise Agreement, that was applied to the illegal restitution order.

I was convicted of aiding and abetting the bank robbery committed on September 13, 1990, on March 13, 1991. Between March 13, 1991 and April of 1991, one of the alleged co-defendant's, who had testified against me at trial, was, (unknown to me at the time), placed in the same county jail with me in High Point, N.C., despite the fact that the district court had issued a separation order. This individual had the unobstructed opportunity to sneak up behind me and attack me with a plastic chair.

I did not even know that this person was in the same jail with me until after I was attacked. I subsequently had to have corrective surgery on my left shoulder as a direct result of this incident. I ultimately filed a Tort Claim against the U.S. Marshal's Service. Based upon false and fraudulent promises from Attorney at-Law Ms. Carol A. Carson, in Philadelphia, Pa., I decided to sign an agreement that allowed the government to give you my pain and suffering, $15,000.00., or rather the Wachovia Corporation, my $15,000.00 towards an illegal restitution order.

Mr. Thompson, when you review the cumulative facts as set forth in this letter, what part of <u>due process of law</u> do you believe I received from a court of law! I recognize the cold reality that your decision not to return my financial property to me is not based upon justice or due process of law but your personal belief that I am guilty of participating in the robbery of your bank. However, I will not spend the rest of my liftime trying to convince you and society that I was and still am, completely innocent; but I will guarantee you that I will do everything in my legal power, through civil law, and the Uniform Commercial Code, to compel the Wachovia Corporation to return my rightfully owned $82,365.85.00 that was illegally seized over fifthteen years ago.

c.c. *Federal Deposit Insurance Corporation*

God Bless You
Sincerely,

*Emanuel Brown*

Emanuel Brown

(5)

Wachovia Corporation
Corporate Fraud Investigative Services
NC5417
1525 West W.T. Harris Boulevard
Charlotte, NC 28262



**WACHOVIA**

June 7, 2005

Emanuel Brown
P O Box 759 # 00594-158
Minersville PA 17954

RE:    $371,000.00 Bank Robbery Loss

Dear Mr. Brown:

Mr. Brown, we did not receive reimbursement from any insurance company, nor did we receive $15,000.00 from the Government. The only restitution we received was from United States Treasury for $67,365.85.

I am unable to disclose information to you regarding any insurances carries that we may have.

Sincerely,

Gloria Harlow
Corporate Fraud Investigative Services

Enclosures

Ex(7)



United States Treasury  15-51/000  P 318,564,029

Check No.

07 21 95   32   PHILADELPHIA, PA   —   2038 12208423
Z-2940530   M1   FMS-CAB   CB1588FY95   20180002

Pay to the order of
WACHOVIA BK & TR CO & CAROL CARSON
C/O US ATTY/ATTN STEPHEN J BRITT
615 CHESTNUT STREET
SUITE 1250
PHILADELPHIA PA  19106-4476

$**20000*00

VOID AFTER ONE YEAR

RE  EMANUEL BROWN

⑆2038⑆   ⑈000000518⑈   12208423⑉   010795

Ex (8)

*Carol A. Carson*
*Attorney at Law*
*547 Pelham Road*
*Philadelphia, Pa. 19119*

215-843-6354
215-843-6947 (fax)

July 22, 2005

Robert Reed, Esquire
United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, Pa. 19106

**Re: Emanuel Brown v. USA**

Dear Mr. Reed:

I am writing in reference to the above listed civil matter which we worked on together in 1995. Since I cannot locate the file I will have to rely on my memory for the facts. Mr. Brown filed a civil suit against the government for injuries sustained during an attack by a co-defendant when there was a separation order. Mr. Brown was being held in custody on a bank robbery. The end result was a settlement of $20,000. Since there was restitution in Mr. Brown's criminal matter, his share of the settlement went to the bank. The check was made to myself and Wachovia Bank, I signed the check and forwarded it to the bank, they in turn sent me $5000. Mr. Brown has been informed by the Probation Department that the bank is denying receipt of the $15,000 and has accused me of misappropriating the funds. Is it possible to get a copy of a check that is ten years old? If at all possible could you locate this file and assist me in my efforts to make sure Mr. Brown is properly credited for the $15,000 which was to be used towards his restitution. Mr. Brown is convinced that I confiscated the $20,000 and that the bank did not receive anything towards the restitution and he has been so advised by the probation department.

Any assistance that you can provide in straightening out this matter would be greatly appreciated.

Sincerely,

Carol A. Carson

cc: Emanuel Brown

Ex (9)